UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JEFFREY S. HAYNES, #180006,    )
                               )
         Plaintiff,            )    Case No. 1:17-cv-80
                               )
v.                             )    Honorable Gordon J. Quist
                               )
WILLIAM SCHMUGGEROW, M.D.,     )
et al.,                        )
                               )
         Defendants.           )
_____)

**REPORT AND RECOMMENDATION**

This is a civil rights action brought *pro se* by a former state prisoner under 42 U.S.C. § 1983. This lawsuit arises out of conditions of plaintiff's confinement at the Michigan Reformatory and the Muskegon Correctional Facility. The remaining defendants are William Schmuggerow, M.D., Nurse (unknown) Page, and Physician's Assistant Barbara Hoover. Plaintiff alleges that defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights.[1] Plaintiff seeks injunctive relief and damages.

The matter is before the Court on defendants Dr. Schmuggerow and Physician's Assistant Hoover's motion to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 17), as well as their motion for summary judgment (ECF No. 30). Plaintiff filed responses to the latter motion. (ECF

---

[1] All other claims have been dismissed. (ECF No. 5, 6).

No. 33, 39).

For the reasons set forth herein, I recommend that all plaintiff's claims against defendant Page be dismissed without prejudice under Rule 4(m) of the Federal Rules of Civil Procedure for failure to achieve service. I recommend that defendants' motion to dismiss be denied and that their motion for summary judgment be granted, with judgment entered in favor of Dr. Schmuggerow and Physician's Assistant Hoover on all plaintiff's claims.

## Motion to Dismiss

Plaintiff filed his complaint on January 23, 2017. (ECF No. 1). His complaint is deemed filed on January 18, 2017, under the "mailbox rule." (ECF No. 5, PageID.30).

On February 17, 2017, the Court completed its initial screening of plaintiff's complaint under Rule 12(b)(6) standards. The Court held that plaintiff's complaint alleged facts sufficient to state Eighth Amendment claims against defendants William Schmuggerow, M.D., Nurse (unknown) Page, and Physician Assistant (unknown) Bien.[2] (ECF No. 5, PageID.31). The Court's accompanying order (ECF No. 5) dismissed all plaintiff's claims against defendants Bryan and Mulaix and directed service of the complaint against a defendant only where the claim against that defendant had survived initial screening.

---

[2] The waiver of service filed by Physician's Assistant Barbara Hoover indicates that her former last name was Bien. (ECF No. 13).

On April 7, 2017, the Court entered its standard case management order. (ECF No. 14). Among other things, the standard order reminded parties that the Court had already "conducted an initial review of the complaint pursuant to 28 U.S.C. § 1915(e), § 1915A and 42 U.S.C. § 1997e(c), to determine whether it [was] frivolous, malicious, fail[ed] to state a claim upon which relief can be granted or [sought] monetary relief against a defendant that [was] immune from such relief. Upon initial review, the Court conclude[d] that the complaint [was] not subject to dismissal for any of the reasons listed above. ... Accordingly, the Court discourages the filing of motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." (ECF No. 14, PageID.47).

On June 14, 2017, defendants Dr. Schmuggerow and Physician's Assistant Hoover filed their Rule 12(b)(6) motion to dismiss. (ECF No. 17). Plaintiff's pleading has not changed since the Court completed initial screening. I can find no reason to depart from the Court's earlier decision. Accordingly, I recommend that the motion to dismiss be denied.

## **Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Rocheleau v. Elder Living Const., LLC*, 814 F.3d 398, 400 (6th Cir.

2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *France v. Lucas*, 836 F.3d 612, 624 (6th Cir. 2016).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. *See Ellington v. City of E. Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012); *see also Scadden v. Warner*, 677 F. App'x 996, 1001, 2017 WL 384874, at * 4 (6th Cir. Jan. 27, 2017). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional*

*Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 565 (6th Cir. 2016).

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). The moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden – the plaintiff on a claim for relief or the defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (citation and quotation omitted). The Court of Appeals has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and " 'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.' " *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)); *see Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012); *Cockrel*, 270 F.2d at 1056. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## Standards Applicable to the Affirmative Defense
## of Failure to Exhaust Remedies

Dr. Schmuggerow has asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies. A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 "or any other Federal law" must exhaust available administrative remedies. 42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 734. "This requirement is a strong one. To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available, even when the state cannot grant the particular relief requested, and even where the prisoner[ ] believes the procedure to be ineffectual or futile." *Napier v. Laurel County, Ky.*, 636 F.3d 218, 222 (6th Cir. 2011) (internal quotations and citations omitted).

In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." 549 U.S. at 216. The burden is on defendant to show that plaintiff failed to properly exhaust his administrative remedies. The Supreme Court reiterated that "no unexhausted claim may be considered." 549 U.S. at 220. The Court held that when a prisoner complaint contains both exhausted and unexhausted claims, the lower courts should not dismiss the entire "mixed" complaint, but are required to dismiss the unexhausted claims and proceed to address

only the exhausted claims. 549 U.S. at 219-24.

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *Jones v. Bock*, 549 U.S. at 218-19. In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion." 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90; *see Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009). Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a section 1983 action in federal court. 548 U.S. at 90-93; *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011); *see* 42 U.S.C. § 1997e(a).

MDOC Policy Directive 03.02.130 (effective July 9, 2007) sets forth the applicable grievance procedures.[3] In *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009), the Sixth Circuit held that this policy directive "explicitly required [the prisoner] to name each person against whom he grieved," and it affirmed the district court's dismissal of a prisoner's claim for failure to properly exhaust his available administrative remedies. *Id.* at 470.

The Sixth Circuit has "clearly held that an inmate does not exhaust available administrative remedies when the inmate fails entirely to invoke the grievance

---

[3]A copy of the policy directive is found in the record. *See* ECF No. 30-1, PageID.172-78.

procedure." *Napier*, 636 F.3d at 224. An argument that it would have been futile to file a grievance does not suffice. Assertions of futility do not excuse plaintiff from the exhaustion requirement. *See Napier*, 636 F.3d at 224; *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) ("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see also Booth v. Churner*, 532 U.S. at 741 n.6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

## **Proposed Findings of Fact**

The following facts are beyond genuine issue. Plaintiff is an inmate in the custody of the Michigan Department of Corrections.

### A.     Dr. Schmuggerow

In 2014, William Schmuggerow, M.D. was a medical provider at the Michigan Reformatory. (Schmuggerow Aff. ¶ 1, ECF No. 30-4, PageID.250). On May 6, 2014, he evaluated plaintiff for complaints of pain after undergoing right ankle open reduction and internal fixation surgery. Following the surgery, plaintiff experienced significant ankle pain due to a screw that was protruding and causing his skin to tent. During this encounter, Dr. Schmuggerow examined plaintiff's ankle, reviewed and explained the results of his previous imaging studies, prescribed him Depakote for pain, and requested a referral for orthopedic surgery to remove the ankle hardware that was causing him pain. (Schmuggerow Aff. ¶ 2, ECF No. 30-4,

PageID.251; ECF No. 32, PageID.269-72).

On May 30, 2014, plaintiff returned to Dr. Schmuggerow with complaints of continued ankle pain. Dr. Schmuggerow prescribed naproxen because plaintiff indicated that ibuprofen was not alleviating his pain. Dr. Schmuggerow also informed plaintiff that the requested orthopedic surgery had been approved and scheduled. At the end of the visit, Dr. Schmuggerow informed plaintiff that he would reevaluate plaintiff again following his scheduled surgery. (Schmuggerow Aff. ¶ 3, ECF No. 30-4, PageID.251; ECF No. 32, PageID.274-76).

On July 7, 2014, Dr. Schmuggerow again evaluated plaintiff. During this encounter, plaintiff stated that he was still experiencing ankle pain, despite having provided him with various combinations of NSAIDs, Tegretol, Depakote, and Tylenol. Plaintiff also indicated that he believed that Depakote was interfering with his stomach. Accordingly, Dr. Schmuggerow discontinued the Depakote prescription and instead submitted a request to the Assistant Chief Medical Officer for approval of an Ultram prescription. William Borgerding, D.O., reviewed and approved a four-week prescription for Ultram on July 8, 2014. (Schmuggerow Aff. ¶ 4, ECF No. 30-4, PageID.251; ECF No. 32, PageID.280-87).

On July 18, 2014, Dr. Schmuggerow evaluated plaintiff following his ankle surgery to remove right ankle hardware. He reviewed plaintiff's discharge orders, which requested plaintiff be provided Norco for pain control. Accordingly, Dr. Schmuggerow provided plaintiff an emergency five-day order for Norco. He also provided plaintiff a medical detail for an extra pillow, crutches, and meals in his cell

for five days. (Schmuggerow Aff. ¶ 5, ECF No. 30-4, PageID.251-52; ECF No. 32, PageID.293-96). Dr. Schmuggerow evaluated plaintiff again on July 24, 2014, after he requested to be on bed rest. During this visit, Dr. Schmuggerow informed plaintiff that his surgeon stated that he could weight bear as tolerated. Upon observation, plaintiff did not appear to be in any distress. Dr. Schmuggerow instructed plaintiff to increase his activity level and educated him on his condition. He also discussed with nursing staff plaintiff's need to continue his ground floor accommodation until his walk was stable. He continued plaintiff's prescriptions and scheduled to reevaluate him the following month. (Schmuggerow Aff. ¶ 6, ECF No. 30-4, PageID.252; ECF No. 32, PageID.297-300).

On July 25, 2014, plaintiff submitted a kite complaining that he was allergic to the Ultram and still had continued ankle pain. Dr. Schmuggerow evaluated plaintiff on July 29, 2014. During this visit, plaintiff indicated that he had not taken his Ultram in several days because he believed it was making him break out and itch. Upon examination of plaintiff's right ankle wound, other than slight erythema along the lateral side, his wound appeared to be healing well. Dr. Schmuggerow provided plaintiff a new dressing, continued his ground floor accommodation and prescriptions for Tylenol and Naproxen. He discontinued plaintiff's Ultram prescription and instead requested Norco as an alternative, and prescribed Cleocin for the erythema. Dr. Borgerding reviewed and approved a ten-day prescription for Norco on July 30, 2014. (Schmuggerow Aff. ¶ 7, ECF No. 30-4, PageID.252; ECF No. 32, PageID.301-08).

On August 22, 2014, Dr. Schmuggerow evaluated plaintiff and observed plaintiff walk up a flight of stairs without difficulty. Plaintiff stated, however, that he still had pain in his ankle and that his prescriptions were not helping. Dr. Schmuggerow conducted a physical examination, the results of which were largely unremarkable. As plaintiff believed that the Ultram was causing him to breakout, Dr. Schmuggerow submitted a request for a Tramadol prescription and also ordered x-rays to assess the status of his right ankle. (Schmuggerow Aff. ¶ 8, ECF No. 30-4, PageID.252-53; ECF No. 32, PageID.312-14).

On September 9, 2014, Dr. Schmuggerow reviewed plaintiff's radiology report of his right ankle. According to the report, plaintiff's imaging showed that a partial residual screw remained within the tibia and distal metaphysis portion. The report also indicated that plaintiff showed signs of arthritic change at the ankle joint articulating surface. Accordingly, Dr. Schmuggerow scheduled a follow-up appointment with plaintiff to review his imaging studies and reassess his condition for November 2014. (Schmuggerow Aff. ¶ 10, ECF No. 30-4, PageID.253).

Dr. Schmuggerow treated plaintiff in a manner that, in his medical judgment, was appropriate. (Schmuggerow Aff. ¶ 12, ECF No. 30-4, PageID.252; ECF No. 32, PageID.315-17).

On September 11, 2014, plaintiff transferred to Muskegon Correctional Facility. (Schmuggerow Aff. ¶ 11, ECF No. 30-4, PageID.252).

B.   Physician's Assistant Hoover

Physician's Assistant (PA) Hoover has been a medical care provider at the

Muskegon Correctional Facility (MCF) since 2012. (Hoover Aff. ¶ 1, ECF No. 30-6, PageID.256). She is one of the medical providers at MCF who saw and treated plaintiff after his arrival in September 2014. PA Hoover first evaluated plaintiff on November 19, 2014, for his complaints of right ankle pain. He complained that none of his prescription medications were helping with his ankle pain and demanded that he receive a new pair of prescription shoes. She reviewed and discussed the results of plaintiff's x-rays. She also physically examined plaintiff's right ankle, which showed good strength and adequate range of motion. PA Hoover informed plaintiff that a special shoe detail was not medially indicated. She also informed plaintiff, however, that she would schedule him for a longer visit to complete the assessment needed in order to refer him to the Pain Management Committee (PMC), because he indicated that his current pain medications were ineffective. (Hoover Aff. ¶¶ 2-3, ECF No. 30-6, PageID.257; ECF No. 32, PageID.323-25).

When plaintiff presented to health care for his PMC referral on November 26, 2014, he was loud and belligerent, despite PA Hoover's requests for him to cooperate. Consequently, she was forced to terminate the appointment and informed him to contact healthcare with any further complaints. On December 19, 2014, Dr. Howard evaluated plaintiff. Dr. Howard determined that an additional surgery to remove the screw in Mr. Haynes's ankle was not medically necessary. Dr. Howard prescribed Tylenol and naproxen for pain. PA Hoover was not involved in plaintiff's medical care again until April 7, 2015, when she evaluated him for his annual physical. Plaintiff was argumentative, but he had no complaints

regarding his ankle or shoes. (Hoover Aff. ¶¶ 4-6, ECF No. 30-6, PageID.257; ECF No. 32, PageID.326-33).

On July 21, 2015, plaintiff returned to PA Hoover with complaints of ankle pain. Upon exam, plaintiff's right ankle was unremarkable with a slight decrease in range of motion. She encouraged plaintiff to continue with daily stretching and strengthening exercise, continued him on Tylenol and naproxen, and referred him to the PMC. On August 8, 2015, Gary Kerstein, D.O., of the PMC determined that treatment with non-formulary pain medication was not medically indicated and instead recommended additional Tylenol and other NSAIDs. On August 25, 2015, PA Hoover met with plaintiff to discuss the results of the PMC recommendations and informed him of the recommendation and implemented that treatment plan. (Hoover Aff. ¶¶ 7-9, ECF No. 30-6, PageID.258; ECF No. 32, PageID.334-41).

Plaintiff returned to PA Hoover on September 10, 2015. He complained about continued ankle pain and instability. During this visit, PA Hoover physically examined plaintiff's ankle, which showed signs of decreased strength but full range of motion. Accordingly, she submitted a request for ankle brace accommodation. Dr. Borgerding approved the ankle brace accommodation the same day. (Hoover Aff. ¶ 10, ECF No. 30-6, PageID.258; ECF No. 32, PageID.342-47).

PA Hoover treated plaintiff in a manner that, in her medical judgment, was appropriate. (Hoover Aff. ¶ 12, ECF No. 30-6, PageID.258-59).

C. <u>Grievances</u>

Plaintiff filed a number of grievances and pursued some of them through a

Step III decision before he filed this lawsuit. (ECF No. 30-2, PageID.179-207). None of plaintiff's grievances correspond to the claims that he is asserting against Dr. Schmuggerow.[4]

On January 18, 2017, plaintiff filed this lawsuit.

## Discussion

### I.  Eighth Amendment

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to a prisoner's serious medical needs, manifested by prison staff's intentional interference with treatment or intentional denial or delay of access to medical care, amounts to the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104-05. In judging the sufficiency of "deliberate indifference" claims, the Court must view the surrounding circumstances, including the extent of the injury, the realistic possibilities of treatment, and the possible consequences to the prisoner of failing to provide immediate medical attention. *Westlake v. Lucas*, 537 F.2d 857, 860 n.4 (6th Cir. 1976).

In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court clarified the deliberate indifference standard: a prisoner claiming cruel and unusual punishment must establish both that the deprivation was sufficiently serious to rise to constitutional levels (an objective component) and that the state official acted with a

---

[4] PA Hoover did not contest that plaintiff properly exhausted his administrative remedies against her through Grievance No. MCF-2015-07-767-12Z1 and his appeals of the denial of that grievance through a Step III decision. (ECF No. 30-2, PageID.203-07).

sufficiently culpable state of mind (a subjective component).  501 U.S. at 298.  No reasonable trier of fact could find in plaintiff's favor on the subjective component of Eighth Amendment claims against Dr. Crompton.

The Supreme Court held in *Farmer v. Brennan*, 511 U.S. 825 (1994), that deliberate indifference is tantamount to a finding of criminal recklessness.  A prison official cannot be found liable for denying an inmate humane conditions of confinement "unless the official knows of and disregards an excessive risk to inmate health or safety."  511 U.S. at 837.  The Sixth Circuit's decision in *Miller v. Calhoun County*, 408 F.3d 803 (6th Cir. 2005), summarized the subjective component's requirements:

> The subjective component . . . requires a showing that the prison official possessed a sufficiently culpable state of mind in denying medical care. Deliberate indifference requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. The prison official's state of mind must evince deliberateness tantamount to intent to punish. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference.  Thus, an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Miller*, 408 F.3d at 813 (citations and quotations omitted).

Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second-guess medical judgments and constitutionalize claims that sound in state tort law.  *See Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011); *Westlake*, 537 F.2d 860 n.5; *Reed v. Speck*, 508 F. App'x 415, 419 (6th Cir. 2012) ("The subjective component is

intended 'to prevent the constitutionalization of medical malpractice claims.' ") (quoting *Dominguez v. Corr. Med. Servs.*, 555 F.3d at 550)).

Plaintiff has not presented evidence sufficient to support the subjective component of an Eighth Amendment claim for deliberate indifference to serious medical needs. The record shows that Dr. Schmuggerow and PA Hoover treated plaintiff's conditions and displayed no deliberate indifference. The claims that defendants "should have" provided him with "different" medical care are at best, state-law malpractice claims.

Plaintiff's disagreement with the treatment provided falls short of supporting an Eighth Amendment claim. *See e.g., Hearington v. Pandya*, 689 F. App'x 422, 426- 7 (6th Cir. 2017); *Kosloski v. Dunlap*, 347 F. App'x. 177, 180 (6th Cir. 2009).

## II. Exhaustion

Dr. Schmuggerow raised the affirmative defense that plaintiff did not properly exhaust his administrative remedies against him on his claims. Exhaustion is mandatory. *Woodford*, 548 U.S. at 85. "[N]o unexhausted claim may be considered." *Jones v. Bock*, 549 U.S. at 220.

Plaintiff seeks to avoid dismissal of his claims against Dr. Schmuggerow by arguing that the individual Corizon employees providing his medical treatment change every time he is transferred between prisons. He claims, "[I]f he had to file a new grievance through the three-step process every time he was transferred, he would never be able to file any 1983 action at any time." (Plf. Brief at 3, ECF No. 33, PageID.355). He argues that, even though the names of the health care professionals

providing treatment changes with each transfer, it should be deemed a "continuing violation" because all the health care professionals are Corizon employees. (*Id.*).

Plaintiff's argument is factually and legally unsupported. A common employer does not establish a continuing violation.[5] Further, prisoner transfers are common, and Michigan prisoners routinely exhaust their available administrative remedies against health care professionals by pursuing their grievances through all three steps of the grievance process. Plaintiff pursued Grievance No. MCF-2015-07-767-12Z1 against PA Hoover through a Step III decision. (ECF No. 30-2, PageID.203-07).

I find that Dr. Schmuggerow has carried his burden on the affirmative defense and is entitled to dismissal of all of plaintiff's claims.

### III.   Lack of Service of Process for Defendant Unknown Page

All plaintiff's claims against defendant Unknown Page should be dismissed for failure to achieve service of process. This lawsuit has been pending for almost a year and this defendant has never been served with process or otherwise appeared. Accordingly, I recommend that all plaintiff's claims against defendant Page be dismissed without prejudice under Rule 4(m) of the Federal Rules of Civil Procedure. This report and recommendation serves as plaintiff's notice of impending dismissal. *See Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 623 (6th Cir. 2004); *accord Reynosa v. Schultz*, 282 F. App'x 386, 393–94 (6th Cir. 2008).

---

[5] A continuing violation theory cannot save plaintiff's claims from dismissal because Dr. Schmuggerow is not seeking dismissal on the basis that a grievance that plaintiff filed against him was untimely. *See Hoosier v. Liu*, No. 2:16-10688, 2017 WL 7262956, at *6 (E.D. Mich. Oct. 30, 2017).

**Recommended Disposition**

For the reasons set forth herein, I recommend that all plaintiff's claims against defendant Page be dismissed without prejudice under Rule 4(m) of the Federal Rules of Civil Procedure for failure to achieve service.  This report and recommendation serves as plaintiff's notice of impending dismissal.

I recommend that defendants' Rule 12(b)(6) motion to dismiss (ECF No. 17) be summarily denied, and that their motion for summary judgment (ECF No. 30) be granted, with judgment entered in favor of Dr. Schmuggerow and Physician's Assistant Hoover on all plaintiff's claims.  On an alternative basis, Dr. Schmuggerow is entitled to dismissal of plaintiff's claims without prejudice based on the affirmative defense of plaintiff's failure to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a).


Dated:   February 8, 2018            /s/  Phillip J. Green            
                                     PHILLIP J. GREEN
                                     United States Magistrate Judge


**NOTICE TO PARTIES**

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  See Thomas v. Arn, 474 U.S. 140 (1985); Keeling v. Warden, Lebanon Corr. Inst., 673 F.3d 452, 458 (6th Cir. 2012); United States v. Branch, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  See McClanahan v. Comm'r of Social Security, 474 F.3d 830, 837 (6th Cir. 2006); Frontier Ins. Co. v. Blaty, 454 F.3d 590, 596-97 (6th Cir. 2006).